# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| MESSIAH GREEN, | :: | MOTION TO VACATE |
| Movant, | :: | 28 U.S.C. § 2255 |
| | :: | |
| v. | :: | CRIMINAL NO. |
| | :: | 1:08-CR-0171-RWS-RGV-1 |
| UNITED STATES OF AMERICA, | :: | |
| Respondent. | :: | CIVIL ACTION NO. |
| | :: | 1:11-CV-2909-RWS-RGV |

## ORDER FOR SERVICE OF REPORT AND RECOMMENDATION

Attached is the report and recommendation of the United States Magistrate Judge made in accordance with 28 U.S.C. § 636(b)(1) and this Court's Local Rule 72. Let the same be filed and a copy, with a copy of this order, be served upon counsel for the parties.

Each party may file written objections, if any, to the report and recommendation within fourteen (14) days after being served with a copy of it. 28 U.S.C. § 636(b)(1). Should objections be filed, they shall specify with particularity the alleged error(s) made (including reference by page number to the transcript if applicable) and shall be served upon the opposing party. The party filing objections will be responsible for obtaining and filing the transcript of any evidentiary hearing for review by the district court. If no objections are filed, the report and recommendation may be adopted as the

opinion and order of the district court and any appeal of factual findings will be limited to a review for plain error or manifest injustice. United States v. Slay, 714 F.2d 1093 (11th Cir. 1983).

The Clerk is **DIRECTED** to submit the report and recommendation with objections, if any, to the district court after expiration of the above time period.

**IT IS SO ORDERED** this 18th day of January, 2012.

*Russell G. Vineyard*
RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| MESSIAH GREEN, | :: | MOTION TO VACATE |
| Movant, | :: | 28 U.S.C. § 2255 |
| | :: | |
| v. | :: | CRIMINAL NO. |
| | :: | 1:08-CR-0171-RWS-RGV-1 |
| UNITED STATES OF AMERICA, | :: | |
| Respondent. | :: | CIVIL ACTION NO. |
| | :: | 1:11-CV-2909-RWS-RGV |

## FINAL REPORT AND RECOMMENDATION

This matter has been submitted to the undersigned Magistrate Judge for consideration of movant Messiah Green's pro se motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, [Doc. 133], and supporting brief, [Doc. 138], and the government's response thereto, [Doc. 139]. Although the Court granted Green an extension until January 3, 2012, to file a reply, he has not done so or requested another extension. For the following reasons, the undersigned **RECOMMENDS** that Green's § 2255 motion be denied.

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

A federal grand jury returned an indictment charging Green and co-defendant Reginald Gibson in Count One with aiding and abetting each other in committing bank robbery, in violation of 18 U.S.C. §§ 2 and 2113(a) and (d), and in Count Two with aiding and abetting each other in using and carrying a firearm during and in relation

to a crime of violence, in violation of 18 U.S.C. §§ 2 and 924(c)(1)(A)(iii). [Doc. 9]. Green pleaded not guilty and proceeded to trial represented by court-appointed counsel Steven Paul Berne. [Docs. 16, 58, 87].

According to the evidence presented at trial, Green, his cousin, co-defendant Reginald Gibson, and his younger brother, Nicholas Gibson, a juvenile, robbed the BB&T Bank in Decatur, Georgia on April 7, 2008. [Doc. 9; Doc. 120 at 34-36, 91]. The night before the robbery, both Gibsons and Green stayed at Kelvin Canty's home because their plan was to travel to the bank on Marta, and Canty's home was closer to a train station. [Doc. 120 at 100-01]. Upon entering the bank, Green fired his handgun into the ceiling. [Id. at 118-19]. Following Green's instructions, co-defendant Gibson confined bank employees and a customer to the side and went through their pockets for cell phones and anything that could be used to contact the police. [Id. at 122-23]. Green and Nicholas Gibson took two employees to open the vault, and Green threatened to kill one of them if she could not open it. [Doc. 119 at 117-18]. The three robbers escaped with $60,652.49, [Doc. 120 at 126, 229], and they returned to Canty's residence where they equally divided the robbery proceeds among themselves. [Id. at 137-38]. Ronald Robinson testified at the trial that he sold a car to Green for $2,550 in fifties and twenties on the day of the robbery. [Id. at 202-04].

Both of the Gibsons testified at the trial and admitted to robbing the bank with Green. [Id. at 36, 91]. Reginald Gibson testified that about a week before the robbery, Green called him regarding the plan to rob the bank. [Id. at 92]. Green told co-defendant Gibson that he wanted to rob the BB&T Bank in Decatur because his former girlfriend worked there, and the bank did not have a security guard. [Id. at 95]. Natasha Washington, a BB&T Bank teller, testified that she had previously dated Green, and, at the time of the robbery, she still maintained regular contact with him. [Doc. 121 at 5-7]. After an earlier robbery at the bank, Washington spoke with Green regarding the bank's security and told him that there was no security guard. [Id. at 13]. Washington identified Green as the robber shown in a photograph taken from the bank's surveillance camera. [Id. at 17].

The jury found Green guilty on both counts, [Doc. 94], and the Court imposed a total sentence of 241 months of imprisonment. [Doc. 107]. Green, represented by new counsel, Vaughn Dunnigan, timely appealed his convictions and sentences. [Docs. 105, 111]. Green argued on appeal that: (1) "the district court violated his Sixth Amendment right to confront witnesses against him when it admitted the cell phone records and cell tower location information from Green's cell phone on the day of the robbery, which it had subpoenaed from Metro PCS into evidence"; and (2) "his sentence for Count [One] was procedurally unreasonable because the district court

3

erroneously found that he organized the robbery, and thus, was subject to a two-level enhancement pursuant to U.S.S.G. § 3B1.1(c)." United States v. Green, 396 F. App'x 573, 573-74 (11th Cir. 2010). On August 31, 2010, the Eleventh Circuit affirmed. Id. at 575. Green did not pursue further direct review.

In August of 2011, Green timely filed this pro se § 2255 motion. [Doc. 133]. Green argues in his motion and supporting brief that he received ineffective assistance of counsel when (1) Mr. Berne failed to call D.R., a minor, as an alibi witness, (2) Mr. Berne failed to argue that Ronald Robinson also "fit the description of the person who allegedly robbed the bank," (3) Mr. Berne failed to effectively cross examine certain witnesses, (4) Mr. Berne failed to obtain video from the Marta station security camera, (5) Mr. Berne and Ms. Dunnigan failed to object to the "use of a minor" guidelines enhancement at sentencing and on appeal, and (6) Ms. Dunnigan failed to contact Green before filing the appellate brief.[1] [Id. at 4; Doc. 138 at 3-4, 6-10]. The government responds that all of Green's grounds for relief lack merit. [Doc. 139].

---

[1] To the extent that Green intended to raise other claims (such as Mr. Berne's failure to investigate an unidentified witness' cell phone records and failure to assert unspecified objections), he has not provided any factual details to support these claims. [Doc. 133 at 5; Doc. 138 at 3-4, 6-7]. It is well settled that mere conclusory statements unsupported by specifics do not raise a constitutional issue in a habeas case. Lynn v. United States, 365 F.3d 1225, 1238-39 (11th Cir. 2004) (per curiam) (citations omitted).

4

## II. DISCUSSION

A. **<u>Legal Standards</u>**

A federal prisoner may file a motion to vacate his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "[T]o obtain collateral relief, a prisoner must clear a significantly higher hurdle than would exist on direct appeal." <u>United States v. Frady</u>, 456 U.S. 152, 166 (1982). An evidentiary hearing is not warranted if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Based on the record before the Court, the undersigned finds that an evidentiary hearing is not required in this case. <u>See</u> <u>Diaz v. United States</u>, 930 F.2d 832, 834 (11th Cir. 1991) (noting that, although prisoner seeking collateral relief is entitled to evidentiary hearing if relief is warranted by facts he alleges, which court must accept as true, hearing is not required if record conclusively demonstrates that no relief is warranted).

The standard for evaluating ineffective assistance of counsel claims is set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). <u>See also</u> <u>Eagle v. Linahan</u>, 279 F.3d 926, 938 (11th Cir. 2001) (<u>Strickland</u> applies to allegations of ineffective

5

assistance of appellate counsel). The analysis is two-pronged. However, a court need not address both prongs "if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697.

A defendant asserting a claim of ineffective assistance of counsel must first show that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. A court analyzing Strickland's first prong must be "highly deferential" and must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; Atkins v. Singletary, 965 F.2d 952, 958 (11th Cir. 1992) ("We also should always presume strongly that counsel's performance was reasonable and adequate. . . ."). Counsel is not incompetent so long as the particular approach taken could be considered sound strategy. Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc); see also Smith v. Murray, 477 U.S. 527, 536 (1986) ("[W]innowing out weaker arguments on appeal and focusing on those more likely to prevail . . . is the hallmark of effective appellate advocacy."); Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc) ("[A] petitioner seeking to rebut the strong presumption of effectiveness bears a difficult burden.")

In order to meet the second prong of Strickland, a petitioner must demonstrate that counsel's unreasonable acts or omissions prejudiced him. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Strickland, 466 U.S. at 691. In order to demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Eagle, 279 F.3d at 943 ("To determine whether the [unreasonable] failure to raise a claim on appeal resulted in prejudice, we review the merits of the omitted claim.").

**B.    Ground One: Failure to Call Alibi Witness**

Green argues that Mr. Berne was ineffective for failing to call D.R., a minor, to testify that Green was babysitting her on the day of the robbery. [Doc. 138 at 6]. The government responds that Mr. Berne presented this alibi defense, which the jury rejected, and Mr. Berne can not be found ineffective for failing to present redundant evidence on this theory. [Doc. 139 at 16-17].

The evidence presented at trial showed that Green, co-defendant Reginald Gibson, and Nicholas Gibson robbed the BB&T Bank in Decatur, Georgia on April 7, 2008. [Doc. 9; Doc. 120 at 34-36, 91]. Mr. Berne called as a witness Umonya Gibson,

7

Green's aunt and D.R.'s mother. [Doc. 122 at 16, 19]. Ms. Gibson testified that she went to Columbus, Georgia on approximately April 4, 2008, and remained there for "at least four to five days." [Id. at 20-21]. Green stayed in Ms. Gibson's apartment in Atlanta and babysat D.R., who was then nine years old, the entire time that Ms. Gibson was in Columbus. [Id. at 20]. According to Ms. Gibson, she left a voice mail message for Green on the morning of April 7, 2008, and followed it up with a text message to ensure that Green had D.R. ready because her father was supposed to pick her up that day. [Id. at 22-23]. Ms. Gibson testified that Green was there when D.R.'s father came for her. [Id. at 24]. Additionally, Green testified that he was taking care of D.R. on April 7, 2008. [Id. at 37-38].

Trial counsel's failure to present additional alibi evidence does not constitute ineffective assistance where, as here, an alibi defense was adequately presented through other witnesses at trial. Hall v. Thomas, 611 F.3d 1259, 1292-93 (11th Cir. 2010). Thus, Green has not shown deficient performance by counsel as to ground one.

### C. Ground Two: Failure to Argue Robinson Matched Description of Robber

Green asserts that Mr. Berne was ineffective for failing to argue that Ronald Robinson was "a close ally of both Gibsons [and] fit the description of the person who allegedly robbed the bank." [Doc. 138 at 8]. The government responds that this issue lacks merit because Robinson testified at trial, and the jury saw him "in person and was

8

able to determine if there was any similarity between him" and the robber. [Doc. 139 at 18].

At trial, Robinson testified that he sold a car to Green for $2,550 in fifties and twenties on the day of the robbery. [Doc. 120 at 202-04]. Accordingly, the jury saw both Robinson and Green and could determine whether either or both of them matched the description of the third bank robber. Moreover, both of the Gibsons testified that Green was the third bank robber, [id. at 36, 91], and Green has presented no evidence to support his assertion that Robinson was "a close ally of both Gibsons." Thus, Green cannot show prejudice based on Mr. Berne's failure to raise this issue, and ground two fails. See Strickland, 466 U.S. at 694.

## D. **Ground Three: Failure to Effectively Cross Examine Witnesses**

Next, Green faults Mr. Berne for not (1) questioning Natasha Washington and Federal Bureau of Investigation ("FBI") Agent Cynthia Myers concerning Kelvin Canty's possible involvement in the bank robbery, (2) impeaching Washington regarding "contradictory statements made to the police or in her written statement,"[2] and (3) discrediting both Gibsons for giving false testimony in exchange for reduced sentences, as evidenced by their affidavits stating that Green "had nothing to do with

---

[2] Green does not specifically identify any contradictory statements allegedly made by Washington. [Doc. 138 at 9-10].

9

the crime and that he was nowhere near the location." [Doc. 138 at 9-10]. The government responds that Mr. Berne effectively cross examined these government witnesses, and Green has not shown prejudice. [Doc. 139 at 19-21].

Mr. Berne did argue that Canty was the robber, not Green. [Doc. 120 at 42-44, 47-49, 168-176, 191]. However, during Agent Myers' testimony, the government introduced a photograph of Canty to show that he did not resemble the person shown in the bank surveillance video of the robbery. [Doc. 121 at 102-04]. Washington, a BB&T Bank teller whom Green had previously dated, identified Green in a photograph taken from the bank's surveillance camera and testified that she had once told Green that the bank did not employee a security guard. [Id. at 5-7, 13, 17]. During Mr. Berne's thorough cross examination of Washington, she admitted that she never told Green how many people it took to open the vault, that the manager would be the first person to arrive in the morning, or that the first person to arrive turned off the alarm. [Id. at 21]. Washington also admitted that she never spoke to Green about the number of security cameras at the bank, but had only talked with him about the possibility of him getting a job at the bank. [Id. at 22]. Mr. Berne also cross examined both Gibsons about the statements they allegedly made exonerating Green. [Doc. 120 at 45-48, 178-80]. When Reginald Gibson denied ever having written or signed the affidavit, Mr.

Berne cross examined him concerning the sentencing benefits he was getting in return for his cooperation and testimony. [Id. at 180-85].

The undersigned finds that Mr. Berne thoroughly cross examined the government's witnesses, and Green has not shown that additional cross examination would have resulted in his acquittal. "The test for ineffectiveness is not whether counsel could have done more; perfection is not required." Waters v. Thomas, 46 F.3d 1506, 1518 (11th Cir. 1995) (en banc). Accordingly, Green has not shown deficient performance by counsel or prejudice as to ground three. See Strickland, 466 U.S. at 690, 694.

### E.    Ground Four: Failure to Obtain Video from Subway Station

Green also complains that Mr. Berne failed to obtain and review a copy of the surveillance video from the subway station security camera. [Doc. 138 at 3, 6]. The government responds that Mr. Berne was not ineffective for failing to obtain a video that did not exist, and even if such tape did exist, Green cannot show prejudice due to the overwhelming evidence of his guilt. [Doc. 139 at 21-23].

At trial, Reginald Gibson testified that he, Green, and Nicholas Gibson took the Marta train from Kelvin Canty's house to the Decatur station to rob the bank. [Doc. 120 at 101, 104]. Mr. Berne cross examined Agent Myers concerning her failure to

11

contact the appropriate subway officials to get a copy of the surveillance tape. [Doc. 121 at 123-24]. Mr. Berne asked Agent Myers:

> Was there anything preventing you as a Federal Bureau of Investigation Agent from going and contacting a fellow officer at the Marta Police Department and asking for any surveillance tapes or videos showing the patrons who were in the Decatur train station on April 7th, 2008, either around 7:30 or 8:00 a.m. or 9:30 or 9:45 a.m.?

[Id. at 124]. Agent Myers responded, "No." [Id.].

Green has not presented any evidence that the surveillance tapes actually existed and has not alleged what they would have shown that might have helped the defense. To the extent that Green claims the video would have shown that someone else, such as Robinson or Canty, was the third robber, there is no record support for this assertion. As noted previously, because Robinson testified at trial, [see Doc. 120 at 202-04], the jury had the opportunity to determine whether he resembled the photograph of the third robber taken from the bank's surveillance camera. Additionally, the government introduced a photograph of Canty to show that he did not resemble the person shown in the bank surveillance video. [Doc. 121 at 102-04]. Moreover, both Gibsons testified that Green was the third bank robber, [Doc. 120 at 36, 91], and Washington identified Green as the robber in the photograph taken from the bank's surveillance camera, [Doc. 121 at 17]. Accordingly, Green has not shown deficient performance or prejudice based on Mr. Berne's failure to obtain and review

12

the subway station surveillance video. See Putnam v. Head, 268 F.3d 1223, 1228 n.3 (11th Cir. 2001) ("Assuming *arguendo* that trial counsel's actions and omissions constituted deficient performance, Appellant has utterly failed to show that, but for these alleged deficiencies, there is a reasonable probability the jury would have found Appellant not guilty," in light of the overwhelming evidence of Appellant's guilt.).

## F. Ground Five: Failure to Object to "Use of a Minor"

Green asserts that both Mr. Berne and Ms. Dunnigan were ineffective for failing to object to the "use of a minor" guidelines enhancement at sentencing and on appeal. [Doc. 138 at 3, 7-8]. The government responds that Mr. Berne did raise this objection, and Ms. Dunnigan was not ineffective for failing to raise the issue on appeal. [Doc. 139 at 23-25].

Green's assertion that Mr. Berne did not raise this objection is belied by the record. Mr. Berne objected to this enhancement on the ground that there was no evidence that Green solicited the minor, Nicholas Gibson, to participate in the robbery and also noted that finding Nicholas Gibson a minor for purposes of this enhancement was "not congruous" with the fact that he was tried as an adult in the Superior Court of DeKalb County. [Doc. 124 at 6-7]. The district court overruled the objection. [Id. at 19-21]. "[T]he fact that a particular defense ultimately proved to be unsuccessful

13

[does not] demonstrate ineffectiveness." Chandler, 218 F.3d at 1314. Thus, Green cannot show deficient performance by Mr. Berne as to ground five.

Green is correct that Ms. Dunnigan did not raise this issue on appeal. However, Ms. Dunnigan "is not ineffective for failing to raise claims 'reasonably considered to be without merit.'" United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000) (citation omitted). In overruling Green's objection to the "use of a minor enhancement," the district court cited United States v. Taber, 497 F.3d 1177, 1181 (11th Cir. 2007), which held that the enhancement applies when the defendant takes some affirmative act to "encourage and help the minor commit the crime." [Doc. 124 at 20]. The district court then found that the enhancement applied in this case because Green's actions in "[g]oing through the door and shooting a gun into the ceiling and striking fear and terror into the hearts of those who are the victim of the crime . . . would certainly rise to the level of help." [Id. at 21; see also Doc. 120 at 119]. In affirming the district court's application of the leader or organizer enhancement, the Eleventh Circuit noted trial evidence that Green had "suggested the bank robbery, selected the bank, recruited two accomplices [which included Nicholas Gibson], developed the plan for the robbery, and played the primary role during the actual commission of the robbery." Green, 396 F. App'x at 575. Moreover, there is no authority for Green's assertion that this enhancement does not apply when a separate

14

sovereign treats a juvenile as an adult. In fact, the Fourth Circuit has held, in an unpublished decision, that the fact that "the minor was tried by a . . . state court as an adult . . . is not relevant to the court's consideration of [a "use of a minor"] enhancement." United States v. Herbert, Nos. 98-4565, 98-4566, 1999 WL 92551, *1 (4th Cir. 1999). Accordingly, Green has not shown that he likely would have prevailed had Ms. Dunnigan raised this issue on appeal.

## G.     Ground Six: Failure to Contact Green Prior to Filing Appellate Brief

Finally, Green maintains that Ms. Dunnigan provided him ineffective assistance by not contacting him prior to filing the appellate brief so that he could "accept or reject any assertions" made therein. [Doc. 138 at 3]. The government responds that Green cannot show prejudice because he has not identified any meritorious issues that Ms. Dunnigan should have raised on appeal. [Doc. 139 at 25-26].

Green does not assert that the grounds raised on appeal by Ms. Dunnigan were frivolous, and the only argument that he contends Ms. Dunnigan was ineffective for failing to raise is the application of the "use of a minor" enhancement. As discussed above, this issue was not reasonably likely to succeed. Accordingly, Green has not shown deficient performance or prejudice as to ground six. See Philmore v. McNeil, 575 F.3d 1251, 1264 (11th Cir. 2009) (per curiam) ("[A]n effective attorney will weed out weaker arguments, even though they may have merit.").

15

## III. CERTIFICATE OF APPEALABILITY

Rule 22(b)(1) of the Federal Rules of Appellate Procedure provides that an applicant for § 2255 relief "cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts provides, "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Section 2253(c)(2) of Title 28 states that a certificate of appealability ("COA") shall not issue unless "the applicant has made a substantial showing of the denial of a constitutional right." A movant satisfies this standard by showing "that reasonable jurists could debate whether (or, for that matter, agree that) the [motion] should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

Based on the foregoing discussion of Green's grounds for relief, the resolution of the issues presented is not debatable by jurists of reason, and the undersigned recommends that he be denied a COA.

AO 72A
(Rev.8/82)

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that this 28 U.S.C. § 2255 motion to vacate sentence, [Doc. 133], and a COA be **DENIED**.

The Clerk is **DIRECTED** to terminate the referral to the assigned Magistrate Judge.

**SO RECOMMENDED**, this 18th day of January, 2012.

*Russell G. Vineyard*
RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE

AO 72A (Rev.8/82)